## J. G. CORCORAN v. H. B. CHESS ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 8, 1889—Decided January 6, 1890.

1. Where a mason contracts in writing to do work at a certain price per cubic yard, the contract is not to be affected by evidence of a usage for "masons' measurement," a mere usage of trade, recent in its date, and not general in its application.

2. A cubic yard means twenty-seven cubic feet; and when the parties have used this term in their contract, it must be presumed, in the absence of evidence to the contrary, that they understood it in its ordinary and popular meaning.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 240 October Term 1889, Sup. Ct.; court below, No. 69 October Term 1885, C. P. No. 2.

On July 29, 1885, service was made of a summons in case in an action by James G. Corcoran against Harvey B. Chess and others, partners as Chess, Cook & Co. Issue.

At the trial on February 26, 1889, it was shown that plaintiff made a bid for work on the defendants' rolling-mill as follows:

"May 18, 1885, I propose to do the mason work for foundations, piers, etc., at your new works in Braddocks, according to the plans, and do it in a good and workmanlike manner, for

$3.45 per cubic yard. Reference J. Wainwright, Esq., chief engineer P., McK. and Y. R. R.

"JAMES G. CORCORAN."

The bid was accepted by the defendants. After the work was done under the contract, a dispute arose between the parties as to the method of measurement of the piers erected, the plaintiff claiming pay according to "masons' measurement,"— taking the girth of the pier, adding thereto one half, and multiplying by the height. The defendants paid to the plaintiff the contract price for the actual number of cubic yards, the right to recover more being reserved by the defendants.

The defendants introduced the testimony of masons, builders, architects, and civil engineers to the effect that since 1834 a usage had been observed generally in Allegheny county, applicable to three feet piers, to measure by a girth and a half multiplied by the height. Builders and contractors called for the plaintiff, testified to a knowledge of this rule of "masons' measurement," and that they avoided it by special contracts.

The court, EWING, P. J., instructed the jury as follows:

The defendants ask the court to charge:

1. That under all the evidence the verdict must be for the defendants.

Answer: Affirmed.[2]

Custom may be sufficient to control a contract if there is a uniform, well established, well known custom, which has continued for so long a time and so uniformly that everybody contracting must be presumed to know that there is such a custom; in that case, the contract is to be interpreted in the light of the custom. If it appear that the defendants in this case understood or ought to have understood, that they were contracting to pay twice as much for the piers, as the written bid says they were to pay, it would bind them.

I am not prepared to say that the alleged custom is bad for immorality; namely, a custom that without any contract, or with a contract, for so much a perch or so much a cubic yard, contractors are to pay for twice the amount of work actually done; but I do think that such a custom is calculated to lead to dishonesty and trickery, and to defrauding and extorting money from people who have such work done.

This custom is not alleged to be general, but local in Pittsburgh, Allegheny and vicinity; one witness said, in Allegheny county, he thought. But the testimony shows, in my judgment, that it is not a uniform custom, and especially in Braddocks, where this work was done; that is not the custom, which, if you believe the testimony, very largely preponderated against it.

[The law does not, I believe, fix what a perch is, which seems to be the ordinary unit in contracting for common work. But a yard is defined by statute; it means three feet, and a cubic yard means twenty-seven cubic feet; and it being considered that the plaintiff has been paid at the rate of his bid for each and every cubic yard of twenty-seven cubic feet of work that he did, I instruct you that your verdict should be for the defendants.] [1]

The jury returned a verdict in favor of the defendants. Judgment having been entered, the plaintiff took this appeal, assigning for error: 1. The portion of the charge in [ ] [1] 2. The refusal of the defendants' point. [2]

*Mr. John S. Ferguson*, for the appellants:

Counsel cited: Coxe v. Heisley, 19 Pa. 243; McMasters v. Railroad Co., 69 Pa. 374; Carter v. Phila. Coal Co., 77 Pa. 286; Whitesell v. Crane, 8 W. & S. 369; Walls v. Bailey, 49 N. Y. 464 (10 Am. Rep. 407); Lowe v. Lehman, 15 Ohio 179; Ford v. Tirrell, 9 Gray 401; Hinton v. Locke, 5 Hill 437; Barton v. McKelvey, 22 N. J. 165; Pittsburgh v. O'Neill, 1 Pa. 342.

*Mr. C. C. Dickey*, for the appellee.

Counsel cited: Jordan v. Meredith, 3 Y. 318; Coxe v. Heisley, 19 Pa. 343; Wetherill v. Neilson, 20 Pa. 448; Evans v. Myers, 25 Pa. 114; Section 12, act of April 15, 1834, P. L. 527; Hartje v. Collins, 46 Pa. 268; Evans v. Waln, 71 Pa. 69.

PER CURIAM:

The plaintiff contracted to do certain mason-work at $3.45 per cubic yard. There was no dispute on the trial below as to the quality of the work; the contention was about its proper

measurement. The plaintiff claimed to be paid according to the rule known as " masons' measurement," which, in building stone piers, he alleged to be, measuring the girth of the pier, adding one half of the girth, and then multiplying by the height. This rule produces a very different result from that of the actual cubic contents of the mason-work, which is the rule contended for by the defendants. The plaintiff alleged, and called witnesses to show, a custom that mason-work was to be measured by the rule contended for by him. The evidence, however, failed to prove any such custom. It was at most a mere usage of the trade, neither ancient nor general enough to acquire the force of custom. Had there been such a custom, the parties must be presumed to have known of it, and to have contracted in view of it. In other words, the law would write such custom into their contract. It is not so with a mere usage of trade, recent in its date and not general in its application. The parties cannot be presumed to have contracted upon the faith, and with knowledge, actual or constructive, on the part of the defendants, of such usage ; and their acquiescence therein must be shown before they can be affected by it. The contract is free from ambiguity. A cubic yard is a term well known to every one. It means twenty-seven cubic feet ; and when the parties used this term in their contract, we must presume, in the absence of evidence to the contrary, they understood it in its ordinary and popular meaning. There being no disputed questions of fact in the case, the learned judge below was right in directing a verdict for the defendants.

Judgment affirmed.